**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERALD SHAY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  23-3507** |
| | : | |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **TRANSPORTATION, JOSEPH HOMITZ,** | : | |
| **MATTHEW WHITAKER** | : | |

<u>**MEMORANDUM**</u>

**MURPHY, J.**                                                              **July 24, 2024**

This is an FMLA case that will eventually focus on what happened to plaintiff Gerald

Shay when he was employed by an agency of the Commonwealth of Pennsylvania.  But first we

must resolve whether Mr. Shay filed his complaint too late and whether the defendants enjoy

immunity under the Eleventh Amendment.  We disagree with defendants that Mr. Shay's

complaint is untimely, both because there is no ninety-day EEOC deadline for FMLA claims and

because the ninetieth day fell on a Sunday and he filed the next day.  But most the defendants

share in the Commonwealth's Eleventh Amendment immunity from FMLA self-care claims,

which was not waived by Congress, by the Commonwealth, or by the Commonwealth's attorney

in this particular case.  After addressing defendants' arguments about the sufficiency of Mr.

Shay's pleadings, we ultimately find that Mr. Shay's claims may proceed for now against the

two individual defendants in their individual capacities.  For the reasons set forth below,

Defendants' motion is granted in part and denied in part.

I.      **Background**

Plaintiff Gerald Shay was hired as a driver's license examiner assistant by the Pennsylvania Department of Transportation (PennDOT) at its Malvern Driver's License Center in June 2018.  DI 11 ¶ 10.  PennDOT is an agency of the Commonwealth of Pennsylvania.  *Id.* ¶ 2.  Mr. Shay's duties included processing driver's license applications and general customer service for applicants.  *Id.*  ¶ 11.  Around October 22, 2019, Mr. Shay filed a grievance "regarding improper denial of over-time shortage of pay" which was never resolved.  *Id.* ¶ 12.  After filing this grievance, Mr. Shay alleges that Defendants PennDOT and Joseph Homitz, District Manager at the PennDOT Malvern center, began a pattern of harassment against him that included "verbal abuse, comments regarding age, false accusations of violations of policies, improper disciplines and denial of promotions, humiliation in front of co-workers by [Mr.] Homitz on many occasions," and negative comments regarding Mr. Shay's eventual invocation of FMLA leave.  *Id.* ¶¶ 3, 13, 15.

Around March 2021, Mr. Shay was diagnosed with a heart condition, high blood pressure, depression, stress, and anxiety, causing him to require certain accommodations upon returning to work after a thirty-day leave of recovery.  *Id.*  ¶ 20.  During this thirty-day period, Mr. Shay used his FMLA leave.  *Id.*  Before Mr. Shay returned to work, he was informed that Mr. Homitz and Regional Manager Ronald Scott Johnson would refuse to allow Mr. Shay his accommodations.  *Id.* ¶ 22.  Ronald Beatty, Jr., Director of the Bureau of Licensing, overrode Mr. Homitz and Mr. Johnson, permitted Mr. Shay's accommodations, and allowed him to return to work.  *Id.*  These accommodations included extra time for Mr. Shay to review and check his work and required a union representative present at any meeting with Mr. Shay.  *Id.* ¶ 23.  Mr. Shay alleges that despite the necessity of his accommodations, he was "still held to the same

standard as if he didn't require accommodations" and was written up by Mr. Homitz several times as "unsatisfactory." *Id.* ¶ 24. Mr. Shay also alleges that Mr. Homitz held several meetings with him where there was no union representative present. *Id.* ¶ 23. These alleged violations of Mr. Shay's accommodations created more stress and required continued treatment for Mr. Shay, causing him to take more FMLA leave. *Id.* ¶ 24.

In February 2022, Mr. Homitz called Mr. Shay into a meeting. *Id.* ¶ 25. When Mr. Shay arrived, Mr. Homitz screamed at him to "get in the conference room now" in front of staff and customers. *Id.* ¶ 26. This altercation caused Mr. Shay to feel faint and experience blurred vision, and eventually required him to leave work and go home because "he was extremely ill." *Id.* ¶¶ 26-27. Mr. Shay's illness continued into the next day at work, February 3, 2022, where he needed to take several breaks throughout the day. *Id.* ¶ 28. On February 4, 2022, Mr. Shay began using FMLA leave because of his illness; he was without pay during this time. *Id.* ¶ 29.

In July 2022, Mr. Shay was informed that he must return to work or face termination. *Id.* ¶ 30. Mr. Shay returned to work on July 30, 2022, and worked the full day despite having to take several breaks due to his illness. *Id.* ¶ 31. Two days later on August 1, 2022, Mr. Shay reported for work but was directed to a conference room where he was suspended without pay for no stated cause. *Id.* ¶ 32. Mr. Shay was informed his suspension would last "until further notice." *Id.* About one month later and while still suspended, on September 2, 2022, Mr. Shay's employment with PennDOT was terminated by letter. *Id.* ¶ 33. The termination letter indicated that Mr. Shay's work was unsatisfactory and referenced other prior actions by Mr. Shay that formed the basis of his termination. *Id.* The letter did not mention the medical accommodations Mr. Shay required to perform his job. *Id.*

Mr. Shay filed suit against the Commonwealth of Pennsylvania[1], PennDOT, and Joseph Homitz and Matthew Whitaker, alleging that Defendants retaliated against him because of his use of FMLA leave.  *Id*. ¶ 34.  Mr. Shay seeks damages for "passed wages, forward wages, lost medical coverage, lost pension, attorney fees, costs and liquidated damages."  *Id*. ¶ 40.

At issue here is defendants' motion to dismiss in which they argue that Mr. Shay's complaint must be dismissed because (1) Mr. Shay's filing of his complaint was untimely; (2) the Commonwealth of Pennsylvania is entitled to Eleventh Amendment immunity; and (3) Mr. Shay failed to state either an FMLA "interference" or "retaliation" claim.  DI 15.

## II.    Standard of Review

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to file a motion to dismiss for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction."  *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  A challenge is facial when "it attacks the complaint without disputing its allegations," and is factual when it "present[s] competing facts undermining federal jurisdiction."  *Manivannan v. United States Dep't of Energy*, 42 F.4th 163, 169 (3d Cir. 2022).   The parties do not dispute any of the underlying facts contained in the complaint; thus Defendants' Eleventh Amendment immunity arguments are facial challenges evaluated under Rule 12(b)(1).

Defendants' argument regarding Mr. Shay's FMLA claim is evaluated under the Rule 12(b)(6) standard.  Rule 12(b)(6) authorizes dismissal where there is a "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion,

---

[1] *See infra* note 4 for a discussion of whether Mr. Shay intended to add the Commonwealth of Pennsylvania as a defendant.

"recitation of the facts is limited to those alleged in Plaintiff's complaints," which we accept "as true and draw all reasonable inferences in Plaintiffs' favor." *Odd v. Malone*, 538 F.3d 202, 205 (3d Cir. 2008). "To survive a motion to dismiss, a plaintiff must 'state a claim to relief that is plausible on its face.'" *Warner v. Pennsylvania*, 569 F. App'x 70, 72 (3d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The complaint must contain 'factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Evaluating a motion to dismiss involves a "three-step process." *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022) (citing *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016)). The first step "requires an articulation of the elements of the claim." *Id.* The second step involves identifying and ignoring "allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679). The third step examines "the plausibility of the remaining allegations," which "involves assuming their veracity, construing them in the light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor." *Lutz*, 49 F.4th at 328.

## III.   Analysis

### A.  Mr. Shay's claims are not foreclosed by the ninety-day EEOC deadline.

Defendants argue that Mr. Shay failed to timely commence his action because Mr. Shay filed his complaint on Monday, September 11, 2023 — ninety-one days after his receipt, on June 12, 2023, of the EEOC letter informing him of his right to sue. DI 15 at 5-6. Thus, Defendants argue, Mr. Shay failed to commence his action "within ninety days" as required under 42 U.S.C. § 2000e-5(f)(1), and his complaint must be dismissed. In response, Mr. Shay argues that his

filing was timely because the ninetieth day was on a weekend, and he filed his complaint the next business day.  DI 16 at 7-8.

Although unaddressed by the parties in their filings, the FMLA does not "require pursuit of administrative remedies before a plaintiff may file a complaint in court."  *Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999); *MacVaugh v. Cnty. of Montgomery*, 301 F. Supp. 3d 458, 463 n.26 (E.D. Pa. 2018); *Thomas v. St. Mary Med. Ctr.*, 22 F. Supp. 459, 472 n.19 (E.D. Pa. 2014).  Unlike Title VII claims, which require claimants to file suit "within ninety days" of receiving their EEOC letters, *see* 42 U.S.C. § 2000e-5(f)(1), the FMLA requires that claimants initiating a private lawsuit do so within two years "after the last action which the employee contends was in violation of the Act."  29 C.F.R. § 825.400(b); 29 U.S.C. § 2617(c)(1).  Mr. Shay alleged that Defendants' last violation occurred on September 2, 2022, and then eventually commenced this action on September 11 the next year.  *See* DI 11 ¶¶ 33, 34.  Because the FMLA does not require exhaustion of administrative relief, *see* 183 F.3d at 190, and Mr. Shay filed his suit within two years after the last alleged violation, Mr. Shay's complaint was timely.  29 C.F.R. § 825.400.

Furthermore, even if Mr. Shay were bound by the ninety-day EEOC deadline, his complaint was still timely filed under Federal Rule of Civil Procedure 6(a)(1)(C).

"[T]he time for the filing of a complaint begins to run when the plaintiff has notice of the EEOC's decision."  *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999).  Federal Rule of Civil Procedure 6 states that when computing time, "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."  Fed. R. Civ. P. 6(a)(1)(C).  Rule 6(a) applies to "any local rule or court order, or in any statute that does not

specify a method of computing time." Fed. R. Civ. P. 6(a).  Defendants did not dispute that the

FMLA does not specify a method of computing time.  DI 22 at 7-9. *See* 29 U.S.C. §§ 2601-2654.

Thus, Rule 6(a) is applicable here.

In *Seitzinger*, the Third Circuit appears to apply Rule 6 to computing the ninety-day

period for EEOC letters informing plaintiffs of their right to sue.[2]  *See* 165 F.3d at 239. There,

the plaintiff claimed to have received her EEOC letter on either June 18 or 19, 1995.  *Id.*  The

Third Circuit noted that because ninety days from plaintiff's receipt of the letter fell on Sunday,

September 17, plaintiff "had until [Monday] September 18 to file her complaint," thus implying

that Rule 6(a) applies to EEOC letters informing plaintiffs of their right to sue.  *Id.*[3]

Here, Mr. Shay received his EEOC letter on June 12, 2023.  *See* DI 15 at 5; DI 16 at 4-5.

Ninety days from this date was thus Sunday, September 10, 2023.  Like the plaintiff in

*Seitzinger*, "because [September 10] was a Sunday," here Mr. Shay had until "the end of the next

day that is not a Saturday, Sunday, or legal holiday" to file his complaint.  165 F.3d at 239; Fed.

R. Civ. P. 6(a)(1)(C).  Mr. Shay filed his complaint on Monday, September 11, 2023, the next

judicial day.  DI 15 at 3.  Mr. Shay's filing was therefore timely because he commenced his

lawsuit on the first judicial day immediately following Sunday.

---

[2] Defendants suggested at oral argument that Rule 6 applies only when the date of receipt of the EEOC letter is in dispute.  *See Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 n.2 (3d Cir. 1986); DI 22 at 5-6.  However, *Mosel* was referring to a different section of Rule 6, which fills in the gaps when the plaintiff's date of receipt of their letter is unclear. Fed. R. Civ. P. 6(d); 789 F.2d at 253 n.2.  Here, however, Rule 6(a) is the applicable rule because the FMLA does not specify a method of computing time.

[3] In *Seitzinger*, however, because plaintiff did not file until Tuesday, September 19, the Third Circuit held that regardless of whether she received her letter on June 18 or 19 she had still failed to file by the ninety-day deadline.  *See* 165 F.3d at 239.

**B. Defendants are immune from suit under the Eleventh Amendment.**

In their motion to dismiss, defendants argue that the Eleventh Amendment immunizes the Commonwealth of Pennsylvania[4] from suit in federal court.  DI 15 at 6-7.  Mr. Shay did not address this argument in his response, but agreed at oral argument that the Commonwealth is no longer a party to this lawsuit.  *See* DI 16 at 7-11; DI 22 at 9.  Despite the parties' agreement to dismiss the Commonwealth itself, defendants' argument raises broader questions about whether Eleventh Amendment immunity extends to defendants PennDOT and to Mr. Homitz and Mr. Whitaker in their official capacities.[5] With the aid of some discussion during oral argument, we will address these important issues *sua sponte*.

**1. Eleventh Amendment immunity applies to Mr. Shay's claim under the self-care provision of the FMLA.**

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  In this way, states generally enjoy immunity from suit in federal court.  *See Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 194-95 (3d Cir. 2008).  However, a state's Eleventh Amendment immunity can be (1) abrogated by Congress or (2) waived by the State.  *Warner*, 569 F. App'x at 72.  Congress has not abrogated

---

[4] It's not entirely clear whether Mr. Shay intended to name the Commonwealth of Pennsylvania as a separate defendant. The Commonwealth is not listed in the caption of his complaint, but Mr. Shay does refer to the Commonwealth as a defendant in the parties section of his complaint and in his response.  *See* DI 11 ¶ 5; DI 16 at 2.  Regardless, at oral argument, Mr. Shay's counsel agreed that the Commonwealth is no longer a party.  DI 22 at 9.

[5] It is unclear if Mr. Shay intended to assert claims against Mr. Homitz and Mr. Whitaker in their official or individual capacities. He refers to them as "adult individual[s]" who are "employed with PennDOT."  DI 11 ¶¶ 3-4.  We will proceed as if Mr. Shay asserted both official and individual capacity claims.

the states' Eleventh Amendment immunity under the self-care provision of the FMLA. *See Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30, 33 (2012).[6]

Here, Mr. Shay did not "cite a specific provision [of the FMLA] in [his] complaint," but it appears that his claim is "rooted in the . . . self-care provision" because[7] he took FMLA leave solely for his own medical condition and not that of a family member. *See Maliandi v. Montclair State Univ.*, 845 F.3d 77, 81 (3d Cir. 2016); DI 11 ¶ 20. Therefore, Congress has not validly abrogated the Commonwealth of Pennsylvania's immunity from Mr. Shay's claim. *See Coleman*, 566 U.S. at 33.

### 2. Defendants did not validly waive Eleventh Amendment immunity.

A state can also waive its Eleventh Amendment immunity. *See Warner*, 569 F. App'x at 72. The Commonwealth has not generally waived its Eleventh Amendment immunity by statute. *See Scheib v. Pennsylvania*, 612 F. App'x 56, 58 (3d Cir. 2015); 42 Pa. Stat. and Cons. Stat. Ann. § 8521(b) (West). Nor has the Commonwealth specifically waived its immunity from suit under the self-care provision of the FMLA. *See Seeney v. Pennsylvania, Dep't of Corr., SCI-Graterford*, 31 F. Supp. 3d 677, 686 (E.D. Pa. 2014) (citing *Coleman*, 566 U.S. at 38).

---

[6] Although *Coleman* involved monetary damages, Eleventh Amendment immunity applies regardless of the nature of the relief sought. *See* 566 U.S. at 30; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Taylor v. Motions Unit Clerk of Cts.*, No. 22-3028, 2023 WL 418061, at *1 (3d Cir. Jan. 26, 2023) (quoting *Pennhurst*).

[7] Plaintiffs sue under the self-care provision of the FMLA when their reason for taking FMLA leave was because of their own "serious health condition" that prevented them from performing their job functions. *See* 29 U.S.C. § 2612(a)(1)(D); *Maliandi*, 845 F.3d at 81. The self-care provision is distinct from the family-care provisions, which "enable an employee to take leave for reasons related to family care." *Seeney v. Pennsylvania, Dep't of Corr., SCI-Graterford*, 31 F. Supp. 3d 677, 684 (E.D. Pa. 2014) (citing *Coleman*, 566 U.S. at 33); 29 U.S.C. § 2612(a)(1)(A)-(C). Here, Mr. Shay took FMLA leave for his own heart condition, high blood pressure, depression, stress, and anxiety. DI 11 ¶ 20.

During oral argument, the Commonwealth's attorney indicated, albeit somewhat unclearly, an intent to waive Eleventh Amendment immunity in this particular case. Therefore, we will address whether counsel for the Commonwealth can waive Eleventh Amendment immunity in individual cases.

Removal to federal court waives Eleventh Amendment immunity in individual cases. *See Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 616-18 (2002); *Lombardo*, 540 F.3d at 197.   In *Lapides*, the Supreme Court held that because Georgia "voluntarily agreed to remove the case to federal court" it had waived its immunity from suit, even in the absence of a Georgia statute authorizing waiver of immunity.  535 U.S. at 620-22.  The Court in *Lapides* "utilized broad language regarding waiver and removal."  *Lombardo*, 540 F.3d at 196. Importantly, however, the Supreme Court relied on removal's "'clear' indication of the State's intent to waive its immunity."  *Lapides*, 535 U.S. at 620 (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999)); *see also Lombardo*, 540 F.3d at 195-96 ("[A] State may consent to suit by making a clear declaration that it intends to submit itself to federal court jurisdiction.").

The Third Circuit has emphasized legislative action when assessing whether the Commonwealth has waived Eleventh Amendment immunity.  *See Lavia v. Pennsylvania Dep't of Corr.*, 224 F.3d 190 (3d. Cir 2000).  In *Lavia*, the plaintiff brought suit against the Commonwealth of Pennsylvania and the Pennsylvania Department of Corrections. *Id.* at 193. The Commonwealth and the Department of Corrections moved to dismiss on immunity grounds and plaintiff argued the Commonwealth had waived such immunity on the basis that a management directive published by the governor's office waived Eleventh Amendment immunity.  *Id.* at 195.  The Third Circuit held that the management directive could not be

considered a waiver of immunity because "it [was] not a waiver made by the *legislature* — as required by Pennsylvania's Constitution." *Id.* at 195-96.

We think a Commonwealth attorney attempting to waive Eleventh Amendment immunity in an individual case is more like the removal in *Lapides* and *Lombardo* than the management directive in *Lavia*. Like the removal in *Lapides* and *Lombardo*, it requires an attorney to "voluntarily agree" to try the case in federal court. Therefore, we think it may well be possible for the Commonwealth's attorney to waive Eleventh Amendment immunity in an individual case.[8] However, like in *Lapides* and *Lombardo*, any such attorney would have to make a "'clear' indication of the States' intent to waive its immunity." *Lapides*, 535 U.S. at 620 (quoting *Coll. Sav. Bank*, 527 U.S. at 675).

Here, assuming that waiver is possible, the Commonwealth's attorney did not waive immunity with sufficient clarity. At oral argument, counsel argued that "PennDOT itself has not waived [Eleventh] Amendment immunity." DI 22 at 10. Immediately after, however, he stated that he did not "believe that [Defendants] have made the argument that PennDOT itself as an agency has [Eleventh] Amendment immunity." *Id*. Moments later, he again stated that he had not attempted to invoke Eleventh Amendment immunity as to Defendant PennDOT because Mr. Shay is seeking backpay, an equitable remedy.[9] *Id*. . When asked whether he would waive

---

[8] "[T]he rationale for applying the general 'voluntary invocation' principle is as strong here, in the context of removal, *as elsewhere*." *Lapides*, 535 U.S. at 621 (emphasis added).

[9] Counsel for the Commonwealth argued that Eleventh Amendment immunity does not apply because Mr. Shay is seeking backpay, an equitable remedy. DI 22 at 10. But Eleventh Amendment immunity applies regardless of the nature of the relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Taylor v. Motions Unit Clerk of Cts.*, No. 22-3028, 2023 WL 418061, at *1 (3d Cir. Jan. 26, 2023) (quoting *Pennhurst*); *Romanelli v. California Bd. of Registered Nurses*, No. 22-1768, 2022 WL 7319987, at *1 (3d Cir. Oct. 13, 2022) (same); *Rothman v. New Jersey, Dep't of Lab. & Workforce Dev.*, 848 F. App'x 532, 533 (3d Cir. 2021) (same).

PennDOT's immunity if it were possible, counsel stated "yes," and that "the proper defendant here really is PennDOT." *Id*. at 12. But then counsel concluded his discussion of Eleventh Amendment immunity by stating that "we have not expressly waived [immunity]." *Id*. at 14. There is no need to belabor this issue further because even if the Commonwealth's attorney could waive Eleventh Amendment immunity in this case, he has not effectively done so.

### 3. Eleventh Amendment immunity extends to defendants PennDOT and Mr. Homitz and Mr. Whitaker in their official capacities.

Eleventh Amendment immunity also extends its protections to (1) state agencies and (2) state employees in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Warner*, 569 F. App'x at 72. Therefore, we must also dismiss defendants PennDOT and Mr. Homitz and Mr. Whitaker in their official capacities, even though the Commonwealth did not seek this relief in its moving papers.[10] Yet because the Eleventh Amendment immunizes state employees only in their official capacities, Mr. Shay's claims may still proceed against Mr. Homitz and Mr. Whitaker to the extent both defendants are sued in their individual capacities. *See Graham*, 473 U.S. at 169; *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023).

### C.  Mr. Shay properly stated an FMLA retaliation claim.

Rule 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Defendants argue that Mr. Shay failed to state either an FMLA "interference" or "retaliation" claim.[11] DI 15 at 6-8. In response, Mr. Shay argues that

---

[10] *See Hershey v. Pennsylvania Dep't of Transp.*, No. 1:21-CV-0506, 2023 WL 6442074, at *4 (M.D. Pa. Sept. 29, 2023) ("Preliminarily, the court will *sua sponte* dismiss the FMLA claims against PennDOT, a state agency, under the doctrine of state sovereign immunity.").

[11] Mr. Shay does not appear to be asserting an FMLA interference claim. *See* DI 22 at 15.

his amended complaint properly pleads the elements of a cause of action under the FMLA.  DI 16 at 9-11.

To establish an FMLA retaliation claim, a plaintiff must show that (1) "she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to the invocation of her rights."  *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012)).  For purposes of the motion to dismiss, the parties do not dispute that (1) Mr. Shay invoked his right to take FMLA leave and (2) that Mr. Shay was subject to an adverse employment action.[12]  The parties dispute only whether the third element was properly pled: whether Mr. Shay's suspension and termination were causally connected to his taking of FMLA leave.  *See* DI 15 at 8; DI 16 at 9-11.

Determining the existence of a causal link "must be considered with a careful eye to the specific facts and circumstances encountered."  *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n.5 (3d Cir. 2000).  "To demonstrate a causal connection, a plaintiff generally must show 'either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'"  *Budhun*, 765 F.3d at 258 (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

---

[12] An adverse employment action is "an action that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'"  *Budhun*, 765 F.3d at 257 (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 73 (2006) (finding suspension without pay is an adverse employment action in Title VII claim).

In *Budhun*, the plaintiff's employer decided to replace her while she was out on FMLA leave and before her FMLA leave had ended.  765 F.3d at 258.  Her employer found and hired a replacement, who accepted the position only two days after plaintiff's FMLA leave ended.  *Id.* Because plaintiff's employer decided to replace her before her FMLA leave ended and offered her position to a replacement only two days later, the Third Circuit held that "such close temporal proximity qualifies as unusually suggestive timing."  *Id.*  Time periods longer than two days have also been found sufficient to constitute unusually suggestive timing.  *See, e.g.*, *Lichtenstein*, 691 F.3d at 307 (finding termination one week after taking FMLA leave and three days after her supervisor returned from vacation sufficient to establish temporal proximity); *Doe v. Mercy Cath. Med. Ctr.*, 855 F. App'x 842, 849 (3d Cir. 2021) (nine days between protected activity and adverse action in Title IX case); *Marrin v. Cap. Health Sys., Inc.*, 2017 WL 2369910, at *13 (D.N.J. May 31, 2017) (termination nine days after return from FMLA leave). However, "over two months between protected activity and adverse employment activity" may be too long to establish temporal proximity.  *See Kieffer v. CPR Restoration & Cleaning Servs., LLC*, 733 F. App'x 632, 638 (3d Cir. 2018).

Here, Mr. Shay was out on FMLA leave during July of 2022 when he was informed that he must return to work or face termination.  DI 11 ¶ 30.  Mr. Shay returned to work on July 30, 2022, and worked the full day.  DI 11 ¶ 31.  On August 1, 2022, Mr. Shay's next scheduled day of work, he was escorted into a conference room where he was suspended without pay for no stated reason.  DI 11 ¶ 32.  Like the employee in *Budhun*, here Mr. Shay suffered an adverse employment action only two days after returning to work.  *See* 765 F.3d at 258.  "Such close temporal proximity qualifies as unusually suggestive timing," and "viewing the facts in the light most favorable to [Mr. Shay]" supports the inference of a causal connection between Mr. Shay's

use of FMLA leave and his suspension from work.  *Id.*  This conclusion is buttressed by the fact that Mr. Shay was eventually terminated by letter a month later, on September 2, 2022.  DI 11 ¶ 33.  Therefore, because Mr. Shay was suspended only two days after returning from FMLA leave, and was terminated a month later, "the temporal proximity in this case is . . . sufficient at the prima facie stage."  *Lichtenstein*, 691 F.3d at 307. Thus, defendants' motion to dismiss is denied as to Mr. Shay's retaliation claim.

## IV.    Conclusion

For the reasons outlined above, defendants' motion to dismiss is granted in part and denied in part.  Defendants' motion is denied as to the ninety-day EEOC deadline and Mr. Shay's retaliation claim.  However, defendants' motion is granted as to the dismissal of defendants Commonwealth of Pennsylvania, PennDOT, and Mr. Homitz and Mr. Whitaker in their official capacities.  The case against Mr. Homitz and Mr. Whitaker in their individual capacities may proceed into discovery.