## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERALD SHAY,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO.   23-3507** |
| | : | |
| **JOSEPH HOMITZ,** *et al.*, | : | |
| **Defendants.** | : | |

### MEMORANDUM

**MURPHY, J.**                                                                                  **May 30, 2025**

The Family and Medical Leave Act grants employees unpaid leave for serious health conditions.  And employers cannot retaliate against employees who exercise their FMLA rights.  Plaintiff Gerald Shay worked at a PennDOT center.  He says that he was suspended and terminated because he took FMLA leave.  But employers may legally terminate an employee for legitimate nondiscriminatory reasons — and that's what defendants say happened here.  On summary judgment, defendants present comprehensive record evidence that Mr. Shay was suspended without pay, and eventually terminated, because of his prolonged unsatisfactory job performance — not because he took FMLA leave.  Mr. Shay relies on the suggestive timing of his suspension and tries to undermine his disciplinary record.   But under the applicable law for FMLA retaliation claims, no reasonable jury could agree with Mr. Shay that defendants' reasons for terminating him were pretextual.

## I.    FACTS AND PROCEDURAL HISTORY[1]

Mr. Shay worked for the Pennsylvania Department of Transportation (PennDOT) as a Driver License Examiner Assistant at the Malvern Driver License Center (Malvern) from June 30, 2018, until his termination on September 2, 2022.  DI 11 ¶¶ 10, 33; DI 26 ¶ 10; DI 29 ¶ 1.  At the relevant times, both defendants were also PennDOT employees; Joseph Homitz was a District Manager, and Matthew Whitaker was a Field Operations Manager.  DI 29 ¶¶ 2-3. Neither defendant was Mr. Shay's direct supervisor.  *Id.* ¶ 7.

PennDOT's employment policies are relevant here.  When an employee receives an overall less than satisfactory employee performance review (EPR), PennDOT initiates a corrective action plan (CAP) "to help the employee improve their performance to a satisfactory level." *Id.* ¶ 9.  Initially, PennDOT monitors the employee's performance for ninety days.  *Id*.  If the employee's performance does not improve, the CAP continues for a sixty-day period followed by two consecutive thirty-day periods.  *Id*.  During each of these periods, "the employee meets with their supervisor or manager for CAP reviews to discuss their progress, allow the employee to ask any questions, and for the supervisor to assist in problem areas." DI 29-5 ¶ 4.  If the employee fails to show satisfactory improvement during a review period, PennDOT holds a pre-disciplinary conference (PDC) to determine whether to continue the CAP "and, if warranted, issue progressive discipline up to and including termination."  DI 29 ¶ 9.

---

[1] We derive these factual allegations from defendants' statement of undisputed facts (DI 29) to the extent not disputed by Mr. Shay in his response to summary judgment (DI 31). Notably, Mr. Shay did not respond to the undisputed facts offered by defendants, nor submit his own additional statement of undisputed facts.  To the extent there is a genuine factual dispute apparent from the briefing and supported by the record, we adopt Mr. Shay's version of events as the nonmovant on summary judgment.

2

On November 6, 2020, sixteen months after Mr. Shay started at Malvern, his then-supervisor Laura Felton issued him a negative EPR with an "unsatisfactory" rating. *Id.* ¶ 8; DI 29-3. In accordance with its own policy, PennDOT initiated a ninety-day CAP. DI 29 ¶ 10. At the close of the ninety-day period on February 24, 2021, Ms. Felton issued Mr. Shay a second "unsatisfactory" EPR. *Id.*; DI 29-4. PennDOT convened a PDC, which resulted in a written reprimand. DI 29 ¶ 10; DI 29-5 ¶ 5; DI 29-4. Mr. Shay disagreed with both "unsatisfactory" EPR ratings. DI 29 ¶ 8. On March 3, 2021, PennDOT initiated the follow-on sixty-day CAP period. *Id.* ¶ 10. Later that month, Mr. Shay requested and received FMLA leave following a medical determination that he suffered from anxiety, depression, and high blood pressure. *Id.* ¶ 11; DI 29-6. Mr. Shay's FMLA leave was extended or resumed several times throughout 2021. DI 29 ¶ 12.

PennDOT initiated a 30-day CAP period on July 8, 2021. *Id.* ¶ 13. After this period, it convened a second PDC and issued Mr. Shay another written reprimand "with a final warning for 'Failure to Perform Satisfactorily.'" *Id.* Around this time, Mr. Whitaker began bullying Mr. Shay. DI 29-1 at 52:2-6. According to Mr. Shay, his interactions with Mr. Whitaker and Mr. Homitz exacerbated his medical condition. *Id.* at 46:16-48:9. On November 17, 2021, PennDOT commenced the second, and final, thirty-day CAP period. DI 29 ¶ 14. This period was extended through January 20, 2022, to capture thirty full days of work after accounting for

3

Mr. Shay's absences. *Id.* ¶¶ 14-15. From February 3[2] until July 30, Mr. Shay was on FMLA leave. *Id.* ¶ 16.[3]

On August 2, 2022, PennDOT convened a PDC to review Mr. Shay's job performance during the final thirty-day CAP period. *Id.* ¶ 17. Mr. Homitz was not present at this final PDC. *Id.*; DI 31 at 8-9; DI 29-1 at 101:22-102:3, 105:18-21. At the close of the PDC, PennDOT suspended Mr. Shay pending an investigation. DI 29 ¶ 18. PennDOT mailed a letter dated August 9, 2022 informing Mr. Shay of his suspension without pay, followed by a termination letter dated August 26, 2022 stating that he would terminated effective September 2. *Id.* ¶¶ 19-20; DI 29-8; DI 29-9.[4] Both letters identified Mr. Shay's "Failure to Perform Satisfactorily" during his CAP review periods as justification for the suspension and termination. DI 29-8; DI 29-9. The termination letter cited prior written reprimands issued on March 2, 2021, June 29, 2021, and November 3, 2021. DI 29-9 at 1.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Following our resolution of a motion to dismiss, only Mr. Shay's FMLA retaliation claim remains. Defendants Homitz and Whitaker move for summary judgment, arguing that Mr. Shay

---

[2] According to Mr. Shay, he became ill at work around February 2, 2022 due to being screamed at by Mr. Homitz. DI 30 at 2 n.3; DI 29-1 at 46:16-48:12, 87:16-89:23. He was granted additional FMLA leave following this incident. DI 30 at 2 n.3; *see* DI 29-1 at 89:8-16.

[3] In his response, Mr. Shay states that he "clearly testifie[d] under oath that he was contacted by his employer and instructed to return to work by July 30, 2022 or he would lose his job." DI 31 at 6. However, the cited portion of Mr. Shay's deposition testimony does not support this assertion. *See* DI 29-1 at 101-05.

[4] Mr. Shay asserted at his deposition that he does not remember receiving the termination letter. DI 29-1 at 13:23-16:16. We accept this as true for purposes of summary judgment, but it does not affect our decision.

4

fails to meet his burden under the controlling *McDonnell Douglas* framework.  DI 30.  First, they argue that Mr. Shay cannot establish a prima facie case as to causation because Mr. Shay was not engaged in a protected activity for the six months leading up to his adverse employment decision.  *Id.* at 5-7.  Second, even were Mr. Shay able to establish a prima facie case, they argue he has failed to establish that PennDOT's legitimate nondiscriminatory reason for suspending and terminating his employment — namely his unsatisfactory job performance — was pretextual.  *Id.* at 7-9; DI 32 at 2-3.[5]

Mr. Shay responds that whether his "taking of FMLA did not cause his suspension and termination is the genuine disputed issue in this case."  DI 31 at 4 (internal quotations omitted). Viewing the evidence in the light most favorable to him, Mr. Shay argues that the unusually suggestive timing — just two days between returning from FMLA leave and suspension without pay — establishes causation.  *Id.* at 5-6.  He also argues that defendants' reliance on a twenty-one-month-old negative EPR for his suspension and termination supports an inference of pretext. *Id.* at 7-8.

## III.    STANDARD OF REVIEW

Rule 56 requires summary judgment movants to "show[] that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  A material fact is one "that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986); *see SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 203 (3d Cir. 2022) ("[F]or a factual dispute to be material, its resolution must have the potential to affect the outcome of the

---

[5] Defendants also argue that they were not personally involved in Mr. Shay's termination, which Mr. Shay disputes.  DI 30 at 9-10; DI 31 at 8-9.  We need not reach this portion of their motion.

suit."). And a "genuine dispute" over a material fact means "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. This evidence can be "direct or circumstantial" and "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)). However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

In deciding whether a genuine dispute of material fact exists, we must "view[] the evidence in the light most favorable to the nonmovant." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010); *see Young v. Martin*, 801 F.3d 172, 174 n.2 (3d Cir. 2015). We may not "weigh the evidence [or] assess its veracity." *Clews v. Cnty. of Schuylkill*, 12 F.4th 353, 358 (3d Cir. 2021). Moreover, because employment discrimination cases focus on why an employer took an adverse action against a plaintiff, which is "clearly a factual question," summary judgment is "rarely appropriate in this type of case." *Marzano v. Comput. Sci. Corp. Inc.*, 91 F.3d 497, 509 (3d Cir. 1996) (quoting *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 899 (3d Cir. 1987)).

## IV.    DISCUSSION

When a retaliation claim is based on circumstantial evidence, as it is here, courts apply the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012) (applying the *McDonnell Douglas* framework to an FMLA retaliation claim). Under this framework, the plaintiff has the initial burden of establishing a prima facie case. *Lichtenstein*, 691 F.3d at 302. If the plaintiff establishes a prima facie case, the burden then shifts to the

defendant to "articulate some legitimate, nondiscriminatory reason" for its decision. *Id.* (quoting *McDonnell Douglass*, 411 U.S. at 802). If the defendant meets this minimal burden, the plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably . . . disbelieve [defendant's] articulated legitimate reasons." *Id.* at 310 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

### A. Mr. Shay establishes a prima facie case.

To establish a prima facie case, Mr. Shay "must show that (1) he took FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to that leave." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004); *see also Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014). Here, defendants concede that Mr. Shay satisfies the first two elements: (1) he took FMLA leave and (2) his suspension without pay and termination constituted adverse employment decisions. DI 30 at 5. However, defendants argue Mr. Shay cannot satisfy the third element — causation. *Id.*

"To demonstrate a causal connection, a plaintiff generally must show 'either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" *Budhun*, 765 F.3d at 258 (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). Determining the existence of a causal link "must be considered with a careful eye to the specific facts and circumstances encountered." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n.5 (3d Cir. 2000). We agree with other district courts that "[w]hen a causal connection relies on temporal proximity alone, courts generally require that the [adverse decision] occur within a few days of the protected activity." *Reyer v. Saint Francis Country House*, 243 F. Supp. 3d 573, 587 (E.D. Pa. 2017) (collecting cases); *Egelkamp v. Archdiocese of*

7

*Philadelphia*, No. 19-3734, 2021 WL 1979422, at *9 (E.D. Pa. May 18, 2021) (unusually

suggestive generally means "within a few days," not months); *see, e.g.*, *Jalil v. Avdel Corp.*, 873

F.2d 701, 708 (3d Cir. 1989) (inferring a causal link from two days); *LeBoon v. Lancaster Jewish*

*Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (three months is not unusually suggestive).

Determining temporal proximity naturally requires a determination as to what constitutes

a "protected activity."  Defendants argue that Mr. Shay's "protected activity" is confined to one

day — his "February 3, 2022 taking of leave."  DI 30 at 6.  In their view, temporal proximity

must be measured from that date — the start of Mr. Shay's relevant FMLA leave period — not

when he returned to work six months later.  *Id.*  Mr. Shay responds that temporal proximity

should be measured from when he returned to work on July 30, 2022.  DI 31 at 5.  We find no

legal support for the defendants' distinction.  Rather, in cases analogous to Mr. Shay's, courts

have considered the end of the FMLA leave period when measuring temporal proximity.  *See*

*Budhun*, 765 F.3d at 258 (when the decision to replace the plaintiff occurred two days after her

FMLA leave ended, this qualified as "unusually suggestive temporal proximity"); *Pierre v.*

*Woods Servs., Inc.*, No. 20-5881, 2021 WL 84068, at *4 (E.D. Pa. Jan. 11, 2021) (measuring

temporal proximity from plaintiff's last day of FMLA leave, not from when the leave was

approved); *Mackenzie v. Caplan Indusries, Inc.*, No. 19-371, 2019 WL 3284886, at *4 (E.D. Pa.

July 19, 2019) (measuring temporal proximity from the moment the plaintiff exhausted his

FMLA leave); *Reyer*, 243 F. Supp. 3d at 587-88 (same); *Mammen v. Thomas Jefferson Univ.*,

462 F. Supp. 3d 518, 527 (E.D. Pa. 2020) (for temporal proximity, considering the date the

plaintiff returned to work following FMLA leave); *Marrin v. Cap. Health Sys., Inc.*, No. 14-

2558, 2017 WL 2369910, at *13 (D.N.J. May 31, 2017) (same).  Here, Mr. Shay was on FMLA

leave, a protected activity, until he returned to Malvern on July 30, 2022.  DI 29 ¶ 16.  Two days

later, he was suspended without pay during the August 2 PDC.  *Id.* ¶¶ 17–19.  We agree that temporal proximity may be measured from Mr. Shay's July 30 return to work from FMLA leave, and that a span of two days is unusually suggestive temporal proximity.  Mr. Shay has met his burden to show causation.

### B.  Mr. Shay fails to show pretext.

Now that Mr. Shay has established a prima facie case, the burden shifts to Mr. Homitz and Mr. Whitaker to articulate a "legitimate nondiscriminatory reason" for suspending and terminating Mr. Shay.  Defendants proffer that "Mr. Shay's job performance for PennDOT was unsatisfactory in almost every (if not every) rating category for 21 months preceding his suspension and termination."  DI 30 at 8.  Defendants direct our attention to Mr. Shay's two negative EPRs, the continuation of his CAP, and associated PDCs.  *Id.* at 8-9; DI 29-3; DI 29-4. They have offered adequate information to demonstrate that Mr. Shay was terminated for unsatisfactory job performance, and thus to meet their "relatively light burden."  *Fuentes*, 32 F.3d at 763; *see Budhun*, 765 F.3d at 256 (referring to defendant's "minimal burden").  The burden then shifts back to Mr. Shay to show that defendants' offered legitimate nondiscriminatory reason is pretextual.

To overcome the defendants' light burden, Mr. Shay must "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext" for retaliation.  *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013); *see Lichtenstein*, 691 F.3d at 309.  He must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *Fuentes*, 32 F.3d at 764.  Moreover, "a 'plaintiff cannot simply

show that the employer's decision was wrong or mistaken' to prove pretext; rather, the 'plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Ross v. Gilhuly*, 755 F.3d 185, 194 n.13 (3d Cir. 2014) (quoting *Brewer v. Quaker State Oil Refin. Corp.*, 72 F.3d 326, 331 (3d Cir. 1995)); *Fuentes*, 32 F.3d at 765.

Mr. Shay argues that defendants' reliance on a twenty-one-month-old negative EPR as the "sole basis for his suspension and termination" supports an inference of pretext.  DI 31 at 7. In his view, "it seems somewhat suspicious that defendants would have waited some 20 plus months to take action."  *Id.*   But the record does not support the argument that defendants sat on their hands for the better part of two years after issuing Mr. Shay's first negative EPR before deciding to terminate him.  *Id.* at 7-8; *see Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").  Far from waiting, the record is clear that PennDOT commenced his initial ninety-day CAP soon after issuing Mr. Shay's first negative EPR in November 2020.  DI 29 ¶ 10; DI 29-5 ¶ 5; DI 29-3; DI 29-4.  Mr. Shay offers no explanation for the second negative EPR he received on February 24, 2021, at the close of the initial ninety-day CAP.  *See* DI 29-4.  The undisputed record shows that during the twenty-one months when Mr. Shay was on a CAP, PennDOT conducted multiple PDCs and issued multiple reprimands for Mr. Shay's unsatisfactory performance.  DI 29-9 at 1; DI 29 ¶¶ 10-18; DI 29-5 ¶¶ 3-9; DI 29-4.  Mr. Shay's argument for pretext does not confront or diffuse any of this.  DI 31 at 7-8.

We also consider whether the unusually suggestive temporal proximity from our prima facie analysis aids Mr. Shay in showing pretext. The Third Circuit has acknowledged that the prima facie analysis may overlap with finding pretext. *See Farrell*, 206 F.3d at 286 (noting that the "evidence supporting the prima facie case is often helpful in the pretext stage and nothing about the *McDonnell Douglas* formula requires us to ration the evidence between one stage or the other"). However, in cases without other supporting evidence, courts have found that unusually suggestive temporal proximity alone is insufficient to support an inference of pretext. *See Menekse v. Harrah's Chester Casino & Racetrack*, 649 F. App'x 142, 145-46 (3d Cir. 2016) (holding that a plaintiff terminated one week after requesting FMLA leave did not establish pretext without other evidence); *Hughes v. City of Bethlehem*, 294 F. App'x 701, 704 (3d Cir. 2008) (finding that temporal proximity between the protected activity and an adverse employment decision might establish causation for a prima facie case, but without additional supporting evidence, was insufficient to establish pretext); *Garcia v. Vertical Screen*, 592 F. Supp. 3d 409, 424 (E.D. Pa. 2022) (holding that temporal proximity of sixteen days was alone insufficient to support an inference of pretext).

*Innella v. Lenape Valley Foundation*, 152 F. Supp. 3d 445 (E.D. Pa. 2015) is particularly instructive. There, the district court held that the plaintiff established a prima facie case but nonetheless failed to adduce sufficient evidence of pretext. *Id.* at 458-61. As here, the short gap between the plaintiff's protected activity and termination was sufficient to establish causation. *Id.* at 458. The district court — finding the plaintiff's pretext argument "superficial at best" — addressed whether temporal proximity supported an inference of pretext. *Id.* at 460. It found that the plaintiff's history of past granted FMLA requests, and history of written reprimands, "undermine[d] her argument that temporal proximity between her invocation of FMLA rights

11

and termination [was] unduly suggestive, and therefore supportive of pretext." *Id*. at 460. Her termination forms cited the same grounds as the two written reprimands predating her FMLA request, which "militate[d] against finding pretext." *Id.* (citing *Shaner v. Synthes*, 204 F.3d 494, 504 (3d Cir. 2000)).

To be sure, in some cases the plaintiff's argument for pretext reinforces (and is reinforced by) temporal proximity. But similarly to the plaintiff in *Innella*, Mr. Shay's FMLA leave requests were granted and extended at various points between March 2021 and his suspension in August 2022. DI 29 ¶¶ 11-12, 15-16; DI 29-1 at 26:17-28:6, 70:12-74:14, 88-89. Further, his November 2020 and February 2021 negative EPRs predated his first FMLA request in March 2021. DI 29 ¶¶ 8, 11; DI 29-3; DI 29-4. Lastly, his August 2022 suspension and termination letters offered the same justification for his firing as those documented in his two EPRs: unsatisfactory performance. DI 29-3; DI 29-4; DI 29-8; DI 29-9. Even though the unusually suggestive temporal proximity of two days is sufficient to establish causation for Mr. Shay's prima facie case, it is insufficient to support an inference of pretext.

Mr. Shay fails to show that the defendant's stated legitimate nondiscriminatory reasons for his suspension and termination contain weaknesses, implausibilities, or contradictions sufficient for a reasonable factfinder to find them unworthy of credence. *Ross*, 755 F.3d at 194 n.13. In failing to make a sufficient showing of pretext, we find that Mr. Shay has not met his burden under *McDonnell Douglas*. Therefore, we must grant defendants' motion for summary judgment.

## V.     CONCLUSION

For the foregoing reasons, we grant defendants' motion for summary judgment because Mr. Shay cannot prove that their proffered legitimate nondiscriminatory reasons for suspending and terminating him were pretextual.